**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

-------------------------------------------------------------------- X

JASON LEWIS STEVENS,

                Plaintiff,

      vs.

TRANS UNION, LLC, EXPERIAN
INFORMATION SOLUTIONS, INC., EQUIFAX
INFORMATION SERVICES, LLC, AMERICAN
EXPRESS COMPANY, GATESTONE & CO.
INTERNATIONAL INC., ZWICKER &
ASSOCIATES, P.C., THE BRYN MAWR TRUST
COMPANY, As Successor-In-Interest to ROYAL
BANK AMERICAN and ABC CORPORATION,

              Defendants.

-------------------------------------------------------------------- X

Case No. 2:21-cv-04840-JS

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT AMERICAN EXPRESS NATIONAL BANK'S**
**MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

STROOCK & STROOCK & LAVAN LLP
Brian C. Frontino
200 South Biscayne Blvd. Suite 300
Miami, Florida 33131
Telephone: (305) 358-9900
Email: bfrontino@stroock.com

*Attorneys for Defendants*
*American Express National Bank*
*Zwicker & Associates, P.C.*

MIA 31560188v3

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

I.     INTRODUCTION ................................................................................................1

II.    FACTUAL BACKGROUND ..............................................................................2

       A.    Plaintiff's Account And The Binding Arbitration Provision ...................2

       B.    Allegations of the Complaint ..................................................................4

III.   ARGUMENT ......................................................................................................4

       A.    Legal Standard ......................................................................................4

       B.    Plaintiff's Claims Are Subject to Binding Arbitration Pursuant to the
             Arbitration Provision in the Cardmember Agreement. .............................5

             1.    Courts Apply a Presumption of Arbitrability. ...............................5

             2.    A Valid Agreement To Arbitrate Exist Under Utah Law. ..............6

             3.    Plaintiff's Claims Fall Squarely Within the Scope of the
                   Arbitration Provision. ..................................................................9

       C.    This Action Should Be Stayed Pending Completion of Arbitration. ......10

IV.    CONCLUSION ..................................................................................................11

MIA 31560188v3

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

Allied-Bruce Terminix Cos., Inc. v. Dobson,
   513 U.S. 265 (1995)..................................................................................................................5

Aneke v. Am. Express Travel Related Servs., Inc.,
   841 F. Supp. 2d 368 (D.D.C. 2012)........................................................................................8

AT&T Mobility LLC v. Concepcion,
   563 U.S. 333 (2011).............................................................................................................5, 6

AT&T Techs., Inc. v. Commc'ns Workers of Am.,
   475 U.S. 643 (1986)..................................................................................................................9

Buckeye Check Cashing, Inc. v. Cardegna,
   546 U.S. 440 (2006)..................................................................................................................5

Chiron Corp. v. Ortho Diagnostic Sys., Inc.,
   207 F.3d 1126 (9th Cir. 2000), The FAA .................................................................................6

Collins v. Burlington N. R.R. Co.,
   867 F.2d 542 (9th Cir. 1989) ..................................................................................................10

First Options of Chi., Inc. v. Kaplan,
   514 U.S. 938 (1995)..................................................................................................................7

Gray v. Suttell & Assocs.,
   Nos. CV–09–251–EFS, CV–10–5132–EFS, 2012 WL 1951657 (E.D. Wash.
   Mar. 19, 2012)........................................................................................................................10

Green Tree Fin. Corp.-Ala. v. Randolph,
   531 U.S. 79 (2000)....................................................................................................................6

Khanna v. Am. Express Co.,
   No. 11 Civ. 6245 (JSR), 2011 WL 6382603 (S.D.N.Y. Dec. 14, 2011) ..................................8

KPMG LLP v. Cocchi,
   565 U.S. 18 (2011)....................................................................................................................7

Lux v. Good Guys,
   No. SACV 05-300-CJC ANX, 2005 WL 1713421 (C.D. Cal. July 11, 2005) ........................10

Miller v. Corinthian Colls., Inc.,
   769 F. Supp. 2d 1336 (D. Utah 2011)......................................................................................8

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,
    473 U.S. 614 (1985)...........................................................................................................6

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,
    460 U.S. 1 (1983)...........................................................................................................5, 6

Oldroyd v. Elmira Sav. Bank, FSB,
    134 F.3d 72 (2d Cir. 1998)...............................................................................................10

Perry v. Thomas,
    482 U.S. 483 (1987)...........................................................................................................5

Piccini v. Wells Fargo Auto Finance, Inc.,
    No. CV 08–8125–PCT–DGC, 2009 WL 307276 (D. Ariz. Feb. 9, 2009) ..............................10

Prima Paint Corp. v. Flood & Conklin Mfg. Co.,
    388 U.S. 395 (1967)...........................................................................................................5

Rodriguez v. Am. Techs., Inc.,
    136 Cal. App. 4th 1110 (2006) ..........................................................................................10

Shearson/Am. Express, Inc. v. McMahon,
    482 U.S. 220 (1987)...........................................................................................................6

Simula, Inc. v. Autoliv, Inc.,
    175 F.3d 716 (9th Cir. 1999) ..............................................................................................9

Smith v. ComputerTraining.com Inc.,
    772 F. Supp. 2d 850 (E.D. Mich. 2011), aff'd, 531 F. App'x 713 (6th Cir.
    2013) ................................................................................................................................8

Southland Corp. v. Keating,
    465 U.S. 1 (1984)...............................................................................................................6

Spann v. Am. Express Travel Related Servs. Co., Inc.,
    224 S.W.3d 698 (Tenn. Ct. App. 2006)................................................................................8

Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.,
    559 U.S. 662 (2010)...........................................................................................................6

**Statutes**

9 U.S.C.A. § 4.....................................................................................................................5

9 U.S.C. § 3.......................................................................................................................10

15 U.S.C. § 1681s-2(b) ........................................................................................................1

FAA.......................................................................................................................... *passim*

-iii-

FAA Section 2.................................................................................................................5

Fair Credit Extension Uniformity Act ...........................................................................1

Fair Credit Reporting Act ...............................................................................................1

FCEUA ......................................................................................................................1, 4, 9

FCRA ................................................................................................................1, 4, 9, 10

FDCPA.........................................................................................................................10

Federal Arbitration Act, 9 U.S.C. §§ 1-16.....................................................................1

Governing Law ...............................................................................................................7

Utah Code Ann. § 25-5-4(2)(e).......................................................................................7

Utah Code Ann. §§ 70C-4-102(b) ..................................................................................7

-iv-

## I.     INTRODUCTION

Pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "FAA"), defendant American Express National Bank ("American Express") (erroneously sued as American Express Company) respectfully moves to compel plaintiff Jason Lewis Stevens ("Plaintiff") to arbitrate his claims for violation of the Fair Credit Reporting Act ("FCRA"), the Fair Credit Extension Uniformity Act ("FCEUA"), and abuse of process, and further respectfully moves that this action be stayed pending completion of arbitration.

By his Complaint (the "Complaint"), Plaintiff alleges that American Express violated the FCRA "by willfully and negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. § 1681s-2(b)."  Plaintiff alleges that American Express also violated the FCEUA by "[e]ngaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," "[f]alsely representing the character, amount, or legal status of a debt," "[c]ommunicating information that is known to be false," "[u]sing false and deceptive means to collect a debt," and "[u]sing unfair or unconscionable means to collect or attempt to collect a debt."  Finally, Plaintiff alleges that American Express engaged in abuse of process by instituting a collection lawsuit against Plaintiff.  Although Plaintiff's claims are meritless, they are subject to mandatory arbitration pursuant to the arbitration provision (the "Arbitration Provision") contained in the cardmember agreement governing the Account (defined below).

Accordingly, American Express respectfully requests that the Court enter an order compelling Plaintiff to arbitrate his claims pursuant to the terms of the binding Arbitration Provision and staying this action pending the completion of arbitration.

MIA 31560188v3

## II.   FACTUAL BACKGROUND

**A.   Plaintiff's Account And The Binding Arbitration Provision**

On or about July 21, 2017, Plaintiff applied for a Blue Business Plus card, using his personal residential address, date of birth, and social security number and identified Nova 789 LLC ("Nova 789") as the associated business for the account.  (Declaration of Keith Herr ("Herr Decl.") ¶ 4.)   American Express approved Plaintiff's application and opened the Blue Business Plus card account, ending in 03007 (previously ending in 02009), on July 24, 2017 (the "Account"), with Plaintiff as the Basic Cardmember and Nova 789 as the business.  (Id. ¶¶ 3-4.) Consistent with its standard business practices, American Express mailed Plaintiff his American Express card along with a copy of the cardmember agreement governing the Account (the "Cardmember Agreement") when the Account was opened.  (Id. ¶ 5 & Ex. A.)  All American Express cardmember agreements, including Plaintiff's, provide that use of the card constitutes acceptance of the cardmember agreement.  (Id., Ex. A.)

The Cardmember Agreement includes a section entitled "Claims Resolution."  (Id., Ex. A, Part 2 of 2, "Claims Resolution".)  This section provides, in pertinent part:

**Claims Resolution**

**. . . You may reject the arbitration provision by sending us written notice within 45 days after your first card purchase. See *Your Right to Reject Arbitration* below.**

For this section, *you* and *us* includes any corporate parents, subsidiaries, affiliates or related persons or entities. *Claim* means any current or future claim, dispute or controversy relating to your Account(s), this Agreement, or any agreement or relationship you have or had with us, except for the validity, enforceability or scope of the Arbitration provision. *Claim* includes but is not limited to: (1) initial claims, counterclaims, crossclaims and third-party claims; (2) claims based upon contract, tort, fraud, statute, regulation, common law and equity; (3) claims by or against any third party using or providing any product, service or benefit in connection with any account; and (4) claims that arise from or relate to (a) any account created under any of the agreements, or any balances on any such

account, (b) advertisements, promotions or statements related to any accounts, goods or services financed under any accounts or terms of financing, (c) benefits and services related to card membership (including fee-based or free benefit programs, enrollment services and rewards programs) and (d) your application for any account. . .

## Arbitration

You or we may elect to resolve any claim by individual arbitration. Claims are decided by a neutral arbitrator.

**If arbitration is chosen by any party, neither you nor we will have the right to litigate that claim in court or have a jury trial on that claim. Further, you and we will not have the right to participate in a representative capacity or as a member of any class pertaining to any claim subject to arbitration. Arbitration procedures are generally simpler than the rules that apply in court, and discovery is more limited. The arbitrator's decisions are as enforceable as any court order and are subject to very limited review by a court. Except as set forth below, the arbitrator's decision will be final and binding. Other rights you or we would have in court may also not be available in arbitration.**

## Initiating Arbitration

. . .

You or we may otherwise elect to arbitrate any claim at any time unless it has been filed in court and trial has begun or final judgment has been entered. . .

## Continuation

This section will survive termination of your Account . . . .

(Id., Ex. A.)  The Cardmember Agreement defines "***You*** and ***your*** [to] mean the Basic Cardmember and the Company.  You agree, jointly and severally, to be bound by the terms of this Agreement."  (Id., Ex. A, Part 2 of 2, "Words we use in the agreement.")  The Cardmember Agreement further states:  "When you or an Additional Cardmember . . . use the Account . . . you agree to the terms of the [Cardmember] Agreement."  (Id., Ex. A, Part 2 of 2, "About your Cardmember Agreement.").)  After receiving the Cardmember Agreement mailed to Plaintiff on or about August 16, 2017, Plaintiff made purchases on the Account.  (Id. ¶ 6 & Ex. B.)  Plaintiff did not elect to reject the Arbitration Provision in the Cardmember Agreement.  (Id. ¶ 5.)

-3-

**B.      Allegations of the Complaint**

Plaintiff does not dispute that he applied for an American Express card on behalf of his employer, Main & Vine Bistro ("Main & Vine"), which is owned and operated by Nova 789. (See Compl. ¶¶ 21-24.)  What Plaintiff claims is that he did not accept or consent to personal responsibility for the Account.  (Id. ¶ 26.)  The application that Plaintiff willingly and voluntarily completed and submitted, however, identifies him as the "applicant" and is based on his personal residential address, date of birth and social security number.  (Herr Decl. ¶ 4.)  As the "applicant," and as Plaintiff concedes, the application was processed with him as the Basic Cardmember. (Id. ¶ 27.) Plaintiff concedes that he used the credit card for the Account. (Id. ¶ 28.) His obligations as a cardmember are set forth in the relevant cardmember agreement.

Plaintiff alleges that American Express improperly attempted to hold him personally responsible for the debt on the Account.  (Id. ¶ 36.)  Plaintiff further alleges that, as a result, American Express inaccurately reported the delinquent status of the Account on Plaintiff's credit report and failed to properly investigate his dispute regarding the same.  (Id. ¶¶ 40, 52.)  Based on the foregoing, Plaintiff alleges that American Express violated the FCRA and FCEUA.  (See id. Counts V, VII.)  In addition, Plaintiff alleges that American Express engaged in abuse of process by commencing a collection lawsuit against him.  (Id. ¶ 63.)  Plaintiff claims that he has suffered economic and emotional harm as a result of American Express' conduct.  (Id. ¶ 70.) Plaintiff seeks an award of statutory damages, actual damages, punitive damages, costs, and reasonable attorneys' fees.  (Id., Prayer for Relief.)

### III.      ARGUMENT

**A.      Legal Standard**

The FAA provides that:

-4-

A party aggrieved by the alleged failure . . . of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C.A. § 4.  This Court should issue an order compelling arbitration because:  (1) the Arbitration Provision is an enforceable agreement between American Express and Plaintiff to submit disputes to binding arbitration; and (2) through the pending action, a controversy exists among Plaintiff and American Express that is subject to the Arbitration Provision.

**B.     Plaintiff's Claims Are Subject to Binding Arbitration Pursuant to the Arbitration Provision in the Cardmember Agreement.**

**1.     Courts Apply a Presumption of Arbitrability.**

Section 2 of the FAA mandates that a binding arbitration agreement in a contract "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  This provision "reflect[s] both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract,'" such that "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms."  AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (citations omitted);[1] see also Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006) ("Section 2 [of the FAA] embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts.").  "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration."  Moses H. Cone

---

[1] The United States Supreme Court has made clear that the FAA is extremely broad and applies to any transaction directly or indirectly affecting interstate commerce.  See, e.g., Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 277 (1995); Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 401 (1967).  There is no question that the transactions at issue involve interstate commerce, as Plaintiff is a Pennsylvania resident and American Express is a national bank located in Utah.

-5-

MIA 31560188v3

Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983); see also Perry v. Thomas, 482 U.S. 483, 490 (1987) (stating that arbitration agreements falling within the scope of the FAA "must be 'rigorously enforce[d]'" (citations omitted)).  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25.

Pursuant to the FAA, arbitration must be compelled where: (1) a valid agreement to arbitrate exists; and (2) the agreement encompasses the claims at issue.  See Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).[2]  An arbitration agreement governed by the FAA is presumed to be valid and enforceable.  See Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987); Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626-27 (1985).  The party resisting arbitration bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims at issue.  Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 92 (2000).

The Arbitration Provision in Plaintiff's Cardmember Agreement is valid, and all of Plaintiff's claims are clearly within its scope.  Accordingly, the Arbitration Provision must be enforced as written.

### 2.     A Valid Agreement To Arbitrate Exist Under Utah Law.

The United States Supreme Court has repeatedly and consistently confirmed that the FAA "requires courts to enforce the bargain of the parties to arbitrate" and "leaves no place for

---

[2] The FAA preempts any state law impediments to enforcing arbitration agreements according to their terms, even under the guise of generally applicable contract principles. See Concepcion, 563 U.S. at 350-52 (holding that states may not superimpose judicial procedures on arbitration); id. at 341 ("When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward:  The conflicting rule is displaced by the FAA.") (citing Preston v. Ferrer, 552 U.S. 346, 353 (2008)); Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 683 (2010) ("[P]arties are 'generally free to structure their arbitration agreements as they see fit.'"); see also Southland Corp. v. Keating, 465 U.S. 1, 16 (1984) (striking down California law that sought to insulate certain issues from arbitration).

MIA 31560188v3

the exercise of discretion by a [ ] court, but instead mandates that [ ] courts shall direct the parties

to proceed to arbitration on issues as to which an arbitration agreement has been signed."

KPMG LLP v. Cocchi, 565 U.S. 18, 21-22 (2011) (citations omitted).

The Cardmember Agreement between Plaintiff and American Express, which includes

the Arbitration Provision, is expressly governed by a Utah choice-of-law provision.  (Herr Decl.,

Ex. A, Part 2 of 2 (provision entitled "Governing Law").)  Thus, while the FAA governs the

enforceability of the Arbitration Provision, Utah law governs the determination of whether a

valid agreement to arbitrate exists.  See First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944

(1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including

arbitrability), courts generally . . . should apply ordinary state-law principles that govern the

formation of contracts.").

There is no question that the Cardmember Agreement, including the Arbitration

Provision, is valid under Utah law.  Utah law provides:

> A credit agreement is binding and enforceable . . . if:  (i) the debtor is provided
> with a written copy of the terms of the agreement; (ii) the agreement provides that
> any use of the credit offered shall constitute acceptance of those terms; and (iii)
> after the debtor receives the agreement, the debtor, or a person authorized by the
> debtor, requests funds pursuant to the credit agreement or otherwise uses the
> credit offered.

Utah Code Ann. § 25-5-4(2)(e).  Further, Utah law expressly allows arbitration provisions to be

included in open-end credit agreements.  See Utah Code Ann. §§ 70C-4-102(b) (providing that

"[a] creditor may change an open-end consumer credit contract in accordance with this section to

include arbitration or other alternative dispute resolution mechanism"), 70C-4-105 (providing

that "a creditor may contract with the debtor of an open-end consumer credit contract for a

waiver by the debtor of the right to initiate or participate in a class action related to the open-end

consumer credit contract").

-7-

Consistent with Utah law, American Express provided Plaintiff with his Cardmember Agreement along with his American Express card when it opened the Account. (Herr Decl. ¶ 5 & Ex. A.) The Cardmember Agreement states that use of the card constitutes acceptance of the terms of the agreement. (Id.) Following receipt of the Cardmember Agreement, Plaintiff used the Account, thereby accepting the terms of the cardmember agreement, including the Arbitration Provision. (Id. ¶ 7 & Ex. A.) Accordingly, as numerous other courts have found for over a decade, the Arbitration Provision is a valid and enforceable agreement to arbitrate under Utah law. See, e.g., Aneke v. Am. Express Travel Related Servs., Inc., 841 F. Supp. 2d 368, 376, 378 (D.D.C. 2012) (holding that arbitration agreement is "valid and enforceable under Utah law, which is the relevant state law in this case" and rejecting plaintiffs' "policy argument about the limits of arbitration and the prejudicial impact it has on their statutory claims"); Khanna v. Am. Express Co., No. 11 Civ. 6245 (JSR), 2011 WL 6382603, at *3-4 (S.D.N.Y. Dec. 14, 2011) (arbitration agreement is "binding and enforceable" under Utah law where cardmember agreement provided that use of the card constituted assent to the agreement's terms and plaintiff used the card); Miller v. Corinthian Colls., Inc., 769 F. Supp. 2d 1336, 1348-49 (D. Utah 2011) (holding that arbitration provision is not substantively or procedurally unconscionable under Utah law); Smith v. ComputerTraining.com Inc., 772 F. Supp. 2d 850, 856-57 (E.D. Mich. 2011) (enforcing Utah choice-of-law provision and finding that arbitration provision is not unconscionable under Utah law), aff'd, 531 F. App'x 713 (6th Cir. 2013); Spann v. Am. Express Travel Related Servs. Co., Inc., 224 S.W.3d 698, 718 (Tenn. Ct. App. 2006) (upholding American Express's Arbitration Provision under Utah law against an unconscionability challenge).

MIA 31560188v3

**3.    Plaintiff's Claims Fall Squarely Within the Scope of the Arbitration Provision.**

Where the parties have entered into a valid arbitration agreement, an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986). Any doubts concerning the scope of arbitrable issues "should be resolved in favor of coverage." See id. Where the clause is broad, as is the case here, there is a heightened presumption of arbitrability, such that "[in] the absence of any express provision excluding a particular grievance from arbitration . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." Id. at 650 (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 584-85 (1960)).

The Arbitration Provision expressly covers the types of claims at issue here. The Arbitration Provision for the Accounts broadly encompasses "any current or future claim, dispute or controversy relating to your Account(s), this Agreement, or any agreement or relationship you have or had with us . . . ." (Herr Decl., Ex. A.) The term "claim" includes "claims based upon contract, tort, fraud, statute, regulation, common law and equity" and expressly includes "claims by or against any third party using or providing any product, service or benefit in connection with any account; and claims that arise from or relate to any account created under any of the agreements, or any balances on any such account." (Id.) This broad contractual language plainly covers Plaintiff's claims for violation of the FCRA, FCEUA and the tort of abuse of process. See, e.g., Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 720-21 (9th Cir. 1999) (holding that a clause requiring arbitration of any dispute "arising in connection with" reached every dispute between the parties having a significant relationship to the contract and all

-9-

disputes having their origin or genesis in the contract); see also Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72, 76 (2d Cir. 1998) (holding that a clause requiring the arbitration of "[a]ny dispute, controversy or claim arising under or in connection with" an employment agreement was "prototypical[ly] broad" and "justifies a presumption of arbitrability"); Gray v. Suttell & Assocs., Nos. CV–09–251–EFS, CV–10–5132–EFS, 2012 WL 1951657, at *2 (E.D. Wash. Mar. 19, 2012) (FDCPA and state consumer protection claims based on attempts to collect unpaid account); Piccini v. Wells Fargo Auto Finance, Inc., No. CV 08–8125–PCT–DGC, 2009 WL 307276, at *1 (D. Ariz. Feb. 9, 2009) (FCRA claims "arose out of" or "related to" agreement).

Plaintiff's claims are based on efforts that American Express allegedly undertook to recover on the delinquent Account balance.  (Compl. ¶ 34.)  Thus, they clearly "arise[] from or relate[] to" the Account or "services related to Cardmembership."

Because a written agreement to arbitrate exists, Plaintiff's claims fall within the scope of that agreement and American Express elects to resolve these claims through binding arbitration, the claims must be submitted to arbitration rather than litigated in court.

**C.     This Action Should Be Stayed Pending Completion of Arbitration.**

Under the FAA, the instant action should be stayed pending arbitration.  See 9 U.S.C. § 3 (requiring the action be stayed "until such arbitration has been had" in accordance with the arbitration agreement); see also Collins v. Burlington N. R.R. Co., 867 F.2d 542, 545 (9th Cir. 1989) (remanding case where district court failed to consider whether a stay was appropriate as a result of binding arbitration agreement); Rodriguez v. Am. Techs., Inc., 136 Cal. App. 4th 1110, 1122 (2006) (holding that procedural aspects of the FAA, including Section 3 of the FAA, apply in California courts); see also Lux v. Good Guys, No. SACV 05-300-CJC ANX, 2005 WL 1713421, *2 (C.D. Cal. July 11, 2005) (granting motion to compel arbitration and staying entire action pending completion of arbitration).

-10-

Accordingly, the Court should stay this action, pending the resolution of arbitration.

## IV.    CONCLUSION

For the foregoing reasons, American Express respectfully requests that the Court grant the Motion and enter an order directing Plaintiff to arbitrate his claims and staying this action pending completion of arbitration.

Dated:  April 13, 2022                                    Respectfully submitted,

                                                          STROOCK & STROOCK & LAVAN LLP
                                                          BRIAN C. FRONTINO


                                                          By:        _/s/ Brian C. Frontino_
                                                                      Brian C. Frontino

                                                          Attorneys for Defendant
                                                              AMERICAN EXPRESS NATIONAL
                                                              BANK, erroneously sued as AMERICAN
                                                              EXPRESS COMPANY

-11-

MIA 31560188v3

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been filed electronically on the **13th day of April, 2022**. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic filing.

*/s/ Brian C. Frontino*
Brian C. Frontino
STROOCK & STROOCK & LAVAN LLP
200 South Biscayne Blvd. Suite 300
Miami, Florida 33131
Telephone:  (305) 358-9900
Email: bfrontino@stroock.com

*Attorneys for Defendants American Express*
*National Bank and Zwicker & Associates, P.C*

MIA 31560188v3