IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASON LEWIS STEVENS | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 21-4840 |
| EQUIFAX INFORMATION SERVICES, | : | |
| LLC, AMERICAN EXPRESS NATIONAL | : | |
| BANK, ZWICKER & ASSOCIATES, P.C., | : | |
| THE BRYN MAWR TRUST COMPANY, | : | |
| as successor in interest to ROYAL BANK | : | |
| AMERICA, and US BANK, N.A., d/b/a | : | |
| ELAN FINANCIAL SERVICES | : | |

## MEMORANDUM

**Chief Judge Juan R. Sánchez**                                                              **September 9, 2022**

Defendants American Express National Bank and Zwicker & Associates move to compel arbitration of this matter pursuant to the terms of a cardholder agreement entered into in July of 2017 when the Plaintiff, Jason Lewis Stevens opened a business credit card account on behalf of and at the direction of his employer, Nova 789 and its owner, Gerald Holtz. Because the Court cannot find that Stevens himself agreed to be bound by the arbitration provision, the motion is denied.[1]

---

[1] Zwicker & Associates (Zwicker) has filed a Joinder to American Express's Motion to Compel Arbitration and Stay Action whereby it "hereby adopts, incorporates and joins the Motion to Compel Arbitration and Memorandum in support thereof filed by co-defendant American Express National Bank." ECF No. 48, at 1. In its Memorandum, Zwicker asserts because "the Arbitration Provision encompasses activity that 'relates to' Plaintiff's Account 'or any balances on' Plaintiff's Account," … "under similar circumstances, courts routinely hold that consumers must arbitrate claims against debt collectors pursuant to arbitration agreements with their creditors." *Id.* 2-3 (citing, *inter alia, Brown v. Firstsource Advantage, LLC*, No. 17-5760, 2019 WL 568935 (E.D. Pa. Feb. 12, 2019) and *Hornicek v. Cardworks Servicing, LLC*, No. 10-3631, 2011 WL 2623274, at *3-4 (E.D. Pa. June 29, 2011)). The arbitration clauses in the agreements in those cases, however, were broad, covering claims for example "by or against anyone connected with the bank

1

**FACTUAL BACKGROUND**

On May 3, 2017, Stevens was hired to manage the Main & Vine Bistro in Villanova, Pennsylvania. Main & Vine was owned by Nova 789, LLC, which in turn was owned by Holtz. Pl's Compl. ¶¶ 21-22, ECF No. 1. In July, 2017, Holtz directed Stevens to go to Royal Bank where Nova 789 held its business accounts, and submit an application for Nova 789 to obtain an American Express credit card to be used for business transactions for Main & Vine's restaurant operations. *Id.* Stevens followed Holtz's instructions and went to Royal Bank where he met with Nova 789's account manager, Nancy Young. *Id.* ¶ 23. Stevens specifically explained to Ms. Young that he was there to open an American Express business credit card account on behalf of Nova 789. At the time, it was represented and it was Stevens' understanding that the application he was submitting was for Nova 789 only. *Id.* ¶¶ 24-25. At no time during the application process did Stevens agree to accept personal responsibility for the credit card, nor was he asked to consent to personal responsibility for the card. *Id.* ¶ 26. Despite this, either Ms. Young or another representative or representatives of Royal Bank, the credit card processor ABC Corp., or American Express "intentionally, knowingly, willfully, recklessly or negligently prepared and submitted a false application to American Express" representing that Stevens would be personally liable for the credit card. *Id.* ¶ 27.

---

or the cardholder, including an 'agent' or 'representative.'" In contrast, the arbitration clause here is quite different:

> "[t]he arbitrator's authority is limited to claims between you and us alone. Claims may not be joined or consolidated unless you and we agree in writing."

ECF 45, Exh. A. There has been no showing here that Stevens has agreed to Zwicker's joinder. The Court therefore finds Zwicker is not entitled to arbitration under the Cardholder agreement and its request to join in the motion to compel arbitration in this matter is denied.

The credit card application was approved and both Stevens and Holtz were given cards to use on the account. *Id.* ¶ 29. Stevens and Holtz used the card exclusively for Main & Vine business operations, purchasing food, liquor and décor for the restaurant and used the reward points to buy gift cards for Main & Vine employees. *Id.* ¶¶ 28, 30. The monthly credit card bills were mailed to Nova 789's address at 795 E. Lancaster Avenue in Villanova, and the monthly payments were made to American Express from Nova 789's business account with Royal Bank. *Id.* ¶¶ 31-32. The Main & Vine restaurant closed in March 2020 and Stevens' employment terminated. *Id.* ¶ 33. Thereafter, Stevens discovered American Express was trying to hold him personally responsible for the debt remaining on the credit card and had commenced collection proceedings against him. *Id.* ¶¶ 34-36.

Throughout 2020 and 2021, Stevens repeatedly communicated to American Express that the card belonged to his former employer and he was not personally responsible for the debt remaining on the card., to no avail. *Id.* ¶ 37. Claiming Stevens had "benefited from the use of this card," and had accepted personal liability because "payments have been made to the account from your Royal Bank account," American Express refused to cease its collection activities against him and in August 2020, reported the delinquency to Trans Union, Equifax and Experian. *Id.* ¶¶ 38, 40. The Royal Bank account referenced by American Express belonged to Nova 789. *Id.* ¶ 39. Since receiving the reported delinquency, Trans Union, Equifax and Experian have been selling erroneous credit reports with the inaccurate information regarding Stevens to third parties, which has negatively impacted his creditworthiness. *Id.* ¶¶ 41-42. Stevens has disputed the accuracy of the information against him with all three of the credit reporting companies and has filed the proper identity theft report with each as well. *Id.* ¶¶ 44-46. Nevertheless, the three

companies are all continuing to inaccurately report Stevens' credit, and Stevens avers none of the defendants have conducted any investigation into the inaccurate information at all.  *Id.*  ¶¶ 50-54.

American Express went still further by hiring Gatestone & Company and Zwicker & Associates to undertake additional efforts to collect the disputed debt from Stevens.  These efforts included, *inter alia,* sending "dunning letters" and other correspondence to Stevens to collect the debt with the intent of annoying, harassing and abusing him, and culminating in the filing by Zwicker of a collection action against him in New Jersey State Court[2] for the allegedly outstanding amount of $29,907.08.  *Id.*  ¶¶ 55-63.  American Express and Zwicker are continuing to litigate the New Jersey lawsuit despite Stevens' repeated requests that it be discontinued.  As a result, Stevens has had to retain counsel to defend the action.  *Id.*  ¶¶ 64-67.

Based on the above facts, Stevens initiated this action on November 2, 2021, claiming violations of the Federal Credit Reporting Act, 15 U.S.C. § 1681, *et. seq.,* (FCRA), the Federal Debt Collections Practices Act, 15 U.S.C. § 1692, *et. seq.,* (FDCPA), the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et. seq.,* (UTPCPL), the Pennsylvania Fair Credit Extension Uniformity Act, 73 P.S. § 2770.4 (FCEUA), Wrongful Use of Civil Proceedings, 42 Pa. C.S. §8351, *et. seq.*, and under Pennsylvania common law for fraud, negligent misrepresentation and abuse of process. Although Trans Union, Experian, Gatestone & Co. and ABC Corporation have settled with Stevens, American Express and Zwicker & Associates have now moved to compel Stevens to arbitrate this action pursuant to the Cardholders Agreement which they allege he entered into when he opened the business account.  Stevens denies he agreed to the arbitration clause as he did not open the account on behalf of himself.  Alternatively, he

---

[2] Presumably, American Express and Zwicker brought suit against Stevens in Atlantic County, New Jersey because Stevens now resides in Brigantine, New Jersey.

asserts American Express and Zwicker have waived their right to arbitrate by filing and continuing to litigate the New Jersey action to collect the debt.

**DISCUSSION**

The moving defendants invoke the provisions of the Federal Arbitration Act, 9 U.S.C. § 1, *et. seq.* (FAA) in filing this motion. Congress originally enacted the Federal Arbitration Act in 1925 to address what appeared at the time to be the undue hostility on the part of courts to arbitration. In so doing, Congress "directed courts to abandon their hostility and instead treat arbitration agreements as 'valid, irrevocable, and enforceable.'" *Epic Systems Corp. v. Lewis,* ___U.S.___, 138 S. Ct. 1612, 1621 (2018) (quoting 9 U.S.C. §2). Under § 2 of the FAA[3] "a liberal federal policy favoring arbitration agreements" was established, which required "courts to enforce agreements to arbitrate according to their terms." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 97 (2012) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983)). To this end, the FAA "entitles any party aggrieved by the alleged failure of another to arbitrate under a written agreement for arbitration to obtain a court order directing that such arbitration proceed in the manner provided for in such agreement." *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 178 (3d Cir. 2010) (quoting 9 U.S.C. §4).

First and foremost, however, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T*

---

[3] Specifically, Section 2 of the Act provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

*Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986) (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). *See also, Century Indemnity Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523-524 (3d Cir. 2009) ("Because an arbitrator's authority derives solely from the parties' agreement to submit their disputes to arbitration, a party cannot be compelled to submit a dispute to arbitration unless it has agreed to do so").  "The Federal Arbitration Act … enables the enforcement of a contract to arbitrate, but requires that a court shall be 'satisfied that the making of the agreement for arbitration is not in issue' before it orders arbitration."  *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 771 (3d Cir. 2013).

      The standards for adjudicating a motion to compel arbitration may differ depending upon whether the parties agree that there exists a valid arbitration agreement or whether questions are raised as to the validity and/or enforceability of the agreement.  Where the *existence* of a valid agreement to arbitrate between the parties is apparent from the face of the complaint or incorporated documents, the motion to dismiss standard applies, such that "accepting all factual allegations as true and construing the complaint in the light most favorable to the plaintiff," any "plausible" reading of the pleadings would entitle the plaintiff to relief.  *See, Singh v. Uber Technologies, Inc.*, 939 F.3d 210, 216 (3d Cir. 2019) (citing *Guidotti*, at 716 F.3d at 772, 774, 776).  "'But if the complaint and its supporting documents are unclear' as to whether the parties agreed to arbitrate, '*or* if the plaintiff has responded to a motion to compel arbitration with *additional facts* sufficient to place the agreement' in dispute, a 'restricted inquiry into factual issues is necessary.'"  *Id.; Asberry-Jones v. Wells Fargo Bank, N.A.*, Civ. A. No. 19-83, 2019 U.S. Dist. LEXIS 79387 at *5 - *6 (E.D. Pa. May 10, 2019).  In that event, the motion to compel arbitration is judged under a summary judgment standard.  *Singh*, 939 F.3d at 216.  The motion shall then

only be granted if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Guidotti*, 716 F.3d at 772 (citing Fed. R. Civ. P. 56).

In this case, Stevens is not contesting the existence of the arbitration provision in the Cardmember Agreement, but instead contests American Express's claims that he is bound by the terms and conditions of the Cardmember Agreement as the credit card belonged to his former employer and not to him personally. In addition to his Declaration in which he attests to never having had an ownership or other interest in Nova 789 aside from his managerial position at Main & Vine, Stevens has responded to the motion with additional evidence to support his claim that the account did not belong to him.[4] This evidence includes copies of the credit card bill reflecting the purchases were all related to the restaurant's business operations, copies of correspondence with American Express National Bank's Fraud Operations Department denying his dispute because payments were made from the Royal Bank account, and his emails to and from Nancy Young, the former Royal Bank Account manager for the Nova 789 account who prepared the credit card application. Pl's Mem. in Opp. to Def.s' Mot. to Compel Arb., Exhs. A, B, E, F, ECF No. 53. Also attached is a copy of American Express's Complaint against Stevens filed in the Law

---

[4] Likewise attached to American Express's motion is the Declaration of Keith Herr, the Assistant Custodian of Records for American Express National Bank. ECF 45. Mr. Herr's Declaration is based upon his review of the records in his custody, and he states the following: Stevens applied for a Blue Business Plus card on July 21, 2017, using his home address, date of birth, social security number and identified Nova 789 as the associated business. The application was approved, and American Express opened the account with Stevens as the basic cardmember and Nova 789 as the business. Herr further attests all American Express card accounts are governed by a written Cardmember Agreement. A copy of the agreement is attached to Herr's Declaration as Exhibit B, as is a copy of the account's billing statement from September 2017 which was delivered to 795 E. Lancaster Avenue, Villanova, Pa. According to Herr, this bill reflected use of the account after American Express sent Stevens the Cardmember Agreement, and the records on the account do not reflect that Stevens ever opted out of the Arbitration provision in the Cardmember Agreement.

Division of the Superior Court of New Jersey in Atlantic County alleging breach of contract, and the Report and Award of the Arbitration Panel of that Court ruling in Stevens' favor because American Express "failed to produce evidence of Defendant's liability, and thereby failed to state a cause of action for which relief can be granted." *Id.* Exhs. C and D.

The Court finds the annexed materials are sufficient to raise the question of whether the account at issue belongs to Stevens and whether he was ever a proper party to the Cardmember Agreement. There clearly *is* a genuine dispute as to several material facts and hence the Court cannot find the movants are entitled to compel arbitration in this matter.

Alternatively, Stevens' waiver argument is also well-taken. Waiver "is the intentional relinquishment or abandonment of a known right." *Morgan v. Sundance*, 142 S. Ct. 1708, 1713 (2022) (quoting *U.S. v. Olano*, 507 U.S. 725, 733 (1993)). In deciding whether a waiver has occurred, the court focuses on the actions of the person who held the right; the court seldom considers the effects of those actions on the opposing party. *Id.* "Consistent with the strong preference for arbitration in the federal courts, waiver is not to be lightly inferred, and waiver normally will be found only where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery." *Paine Webber, Inc. v. Faragalli,* 61 F.3d 1063, 1068-1069 (3d Cir. 1995). "Notwithstanding the preference for arbitration, however, 'a court may refuse to enforce an arbitration agreement, where for example, the alleged defaulting party has acted inconsistently with the right to arbitrate.'" *Nino v. Jewelry Exch., Inc.,* 609 F.3d 191, 208 (3d Cir. 2010) (quoting *St. Mary's Med. Ctr. v. Disco Aluminum Prods. Co.,* 969 F.2d 585, 588 (7th Cir. 1992)).

Here, while American Express moved fairly quickly in filing its motion to compel arbitration in this case, its actions in filing and in pursuing the breach of contract/collection action

in the New Jersey Superior Court are clearly inconsistent with its right to arbitrate. Additionally, the language of the Arbitration clause itself strongly suggests that this is not the usual case for affording a strong preference for arbitration insofar as it provides as follows in relevant part:

> You or we may otherwise elect to arbitrate any claim at any time unless it has been filed in court and trial has begun or final judgment has been entered.

The true claim at issue between the parties in this matter is whether Stevens owes American Express some $29,000 for the unpaid charges on the Blue Business Plus Credit Card. In filing suit for this debt in the Atlantic County, New Jersey Superior Court, and proceeding before the Superior Court's Board of Arbitrators, American Express is now foreclosed from seeking to arbitrate in a different setting under the language contained in the Cardmembers Agreement.

For all of these reasons, the motion to compel arbitration is denied. An appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sánchez
_____
Juan R. Sánchez,    C.J.